UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TOMMY L. LOVE,

                                       Plaintiff,

                             v.

ANDREW SAUL,
Commissioner of Social Security,

                                       Defendant.
_____

DECISION AND ORDER

18-CV-6403L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On October 14, 2014, plaintiff, then 23 years old, filed applications for a period of disability and disability insurance benefits, and for supplemental security income benefits, alleging an inability to work since December 31, 2012. After those applications were initially denied, plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on April 25, 2017. On June 27, 2017, the ALJ issued a decision, concluding that plaintiff was not disabled. (Administrative Transcript, Dkt. #8 at 19-29). That decision became the final decision of the Commissioner when the Appeals Council denied review on April 2, 2018. (Dkt. #8 at 1-4). Plaintiff now appeals.

The plaintiff has moved for judgment remanding the matter solely for the calculation and payment of benefits or in the alternative for further proceedings (Dkt. #9), and the Commissioner

has cross moved (Dkt. #14) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

**DISCUSSION**

## I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

## II. The ALJ's Decision

Here, the ALJ found that the plaintiff has the severe impairments of attention deficit hyperactivity disorder ("ADHD"), major depressive disorder, and anxiety disorder. (Dkt. #8 at 22). Assessing plaintiff's psychological impairments, the ALJ found that plaintiff has moderate restrictions in understanding, remembering or applying information, moderate difficulties in interacting with others, moderate difficulties in maintaining concentration, persistence or pace, and moderate difficulties in adapting or managing himself. (Dkt. #7 at 22).

The ALJ determined that plaintiff retained the RFC to perform work at all exertional levels, but can only perform simple, routine and repetitive tasks (not at a production rate pace), can make only simple work-related decisions, and is limited to work requiring no more than occasional interaction with supervisors, coworkers and/or the public. (Dkt. #8 at 23).

When presented with this RFC at the hearing, vocational expert David A. Festa testified that claimant can perform the representative positions of routing clerk, stock checker (apparel), and hospital cleaner. (Dkt. #8 at 28).

### III. Plaintiff's Appeal

Initially, plaintiff argues that the ALJ failed to properly evaluate his intellectual deficits, because the ALJ failed to credit an alleged prior finding that plaintiff was entitled to benefits based on "mental retardation." (Dkt. #9-1 at 11). Plaintiff also argues that the ALJ erred in noting plaintiff's full-scale intelligence quotient ("IQ") score of 59 from August 2008,[1] but implicitly finding it invalid by failing to conclude that plaintiff was severely intellectually disabled. Plaintiff claims that given this evidence of severe intellectual disability, the ALJ should have considered whether plaintiff satisfies the requirements of Listing 12.05, which provides that a claimant is disabled if he has: (1) an IQ score of 70 or below; and (2) significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, of the four areas of mental functioning; and (3) evidence that the disorder began prior to the age of 22. 29 C.F.R. Pt. 404, Subpt. P., App. 1 §12.05.

First, the record contains no documentation concerning the alleged prior finding of disability or the reasons therefor, not has plaintiff demonstrated that such a finding would have been binding on the Commissioner. As such, the ALJ did not err in allegedly failing to credit it.

With respect to Listing 12.05, which describes intellectual disability based on, inter alia, IQ scores, the listing refers only to "valid" IQ scores: where, as here, an IQ score is "inconsistent with the record as a whole," the ALJ is generally within his discretion to reject it as invalid. *Burnette v. Colvin*, 564 Fed. Appx. 605, 608 (2d Cir. 2014) (unpublished decision). *See also*

---

[1] Generally, an IQ score below 70 suggests significantly below-average functioning.

*Griffin v. Commissioner*, 2019 U.S. Dist. LEXIS 20073 at *9 (W.D.N.Y. 2019); *Paulino v. Astrue*, 2010 U.S. Dist. LEXIS 77070 at *67-*68 (S.D.N.Y. 2010); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 248 (N.D.N.Y. 2010).

Here, the ALJ's implicit determination – that the plaintiff's 2008 IQ score of 59 was not valid – was supported by substantial evidence. In a January 21, 2015 opinion which the ALJ gave "great" weight (Dkt. #8 at 25), consulting psychiatrist Dr. Christine Ransom (in fact, the same psychiatrist who had tested plaintiff in 2008 and initially assessed the low IQ score) found that plaintiff had no more than mild or moderate difficulties in any area of mental functioning (Dkt. #8 at 341-44). Dr. Ransom observed that plaintiff was neat and properly groomed, with intelligible and fluent speech, coherent and goal-directed though processes and a full range of affect. His attention and concentration were intact, and he could count and perform simple calculations without error. Dr. Ransom found plaintiff's cognitive functioning and adaptive functioning to be within the "low to average" range. Ultimately, Dr. Ransom concluded that plaintiff "will have mild difficulty following and understanding simple directions and instructions," but can "perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, learn simple new tasks, perform complex tasks, relate adequately with others and appropriately deal with stress." (Dkt. #8 at 342-33).

Furthermore, despite his low IQ score in 2008, plaintiff testified at his hearing, answering the ALJ's questions responsively, appropriately and with apparent comprehension, and indicated that he had worked sporadically as a part-time dishwasher and barber, with those jobs respectively ending because he worked too slowly, and because he wasn't being fairly paid. (Dkt. #8 at 44-46). His academic and prison records similarly indicated no worse than low-to-average cognitive functioning. *See* Dkt. #8 at 223 (2004 academic performance records relating "average" cognitive

functioning, despite functioning below grade level); 232 (2006 academic records: "Tommy exhibits average to low average intelligence"); 329 (2013 booking intake screening noting average cognitive functioning, appropriate affect and mood). *See also* Dkt. #8 at 349, 352, 383, 386, 389, 404, 414, 418, 423 (2015-2017 jail behavioral health evaluations generally noting average intelligence, intact memory, intact judgment, pleasant and polite behavior). Plaintiff also testified to a wide range of daily activities consistent with the ability to perform simple work, including caring for his personal needs, paying bills, reading, playing basketball, doing laundry, shopping, and using public transportation. (Dkt.# 8 at 41-42, 208-212). As such, given that plaintiff's 2008 low IQ score was anomalous and inconsistent with the remainder of the record, including a subsequent examination and opinion by the same psychiatrist, as well as plaintiff's prison records, employment history, and activities of daily living, the ALJ's decision to find it invalid was supported by substantial evidence.

Assuming *arguendo* that the ALJ erred in failing to find the 2008 IQ score valid, and thus erred in failing to consider Listing 12.05, such error was harmless, as the record does not otherwise support a finding that plaintiff met the requirements of the listing. While the listing requires "an extreme limitation of one, or marked limitation of two" of the four areas of mental functioning, here, the ALJ found (properly, for the reasons discussed above) no more than moderate limitations in any area of mental functioning. Outside of the 2008 assessment and IQ score, there is no evidence of record – for example, nothing in plaintiff's academic records, his psychiatric treatment records, or Dr. Ransom's 2015 report – that establishes a greater-than-moderate limitation in any of the four areas of mental functioning.

Plaintiff also contends that in making his RFC finding, the ALJ erroneously assigned "great" weight to Dr. Ransom's 2015 opinion, while giving only "limited" weight to her more

favorable opinion from 2008, when plaintiff was 17 years old. (Dkt. #8 at 431-36). In the earlier assessment, which was undertaken more than four years prior to the alleged disability onset date and during a period when plaintiff had stopped taking his ADHD medication, Dr. Ransom found that plaintiff's attention and concentration, memory skills, and cognitive functioning were "moderately impaired," but that his mental status was otherwise "normal" for all other categories assessed. (Dkt. #8 at 432-33). After administering an IQ test, Dr. Ransom assigned a full-scale IQ score of 59, suggesting "mildly mentally retarded intellectual functioning." (Dkt. #8 at 434).

The ALJ gave Dr. Ransom's 2008 opinion "limited" weight, noting that it had been rendered several years before the period in issue, and finding that Dr. Ransom's 2015 opinion would naturally, because it was based upon an examination that took place after the alleged disability onset date, be "more reflective of the claimant's functioning during the period under review." (Dkt. #8 at 25). The ALJ adequately explained the reasoning for his decision to give greater weight to Dr. Ransom's 2015 opinion, and I find no error therein.

Plaintiff also argues that even assuming *arguendo* that the ALJ's RFC finding was adequately supported and did not contain an error of law, the Commissioner failed to meet his burden to show that there is other work plaintiff can perform, because the positions identified by the vocational expert require abilities that exceed the RFC found by the ALJ. Specifically, although the RFC finding limited plaintiff to simple tasks and simple decision-making, the vocational expert identified positions which require a General Education Development ("GED") level of 2 in the areas of reasoning, math and/or language, which involve the ability to understand and carry out "detailed" instructions (that is, instructions requiring more than one or two steps).

The Court finds no error in the ALJ's reliance on the vocational expert's testimony. It is well settled that a reasoning level of 2 is not inconsistent with an RFC that is, as here, limited to

6

simple, routine and repetitive tasks involving simple work-related decisions in a quota-less work environment. *See Patterson v. Colvin*, 2015 U.S. Dist. LEXIS 113310 at *43-*44 (W.D.N.Y. 2015) (collecting cases and noting that "courts have routinely held that an RFC determination limitation a plaintiff to simple and routine tasks means that a plaintiff is capable of working a reasoning development level two") (internal quotation marks omitted). *See also Laboriel v. Saul*, 2019 U.S. Dist. LEXIS 143884 at *35-*36 (S.D.N.Y. 2019); *Chaffin v. Colvin*, 999 F. Supp. 2d 468, 475 (W.D.N.Y. 2014).

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the forgoing reasons, I find that to the ALJ's decision is supported by substantial evidence and was not the product of legal error. The plaintiff's motion for judgment reversing and remanding the matter (Dkt. #9) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

                                              DAVID G. LARIMER
                                              United States District Judge

Dated: Rochester, New York
           December 5, 2019.